# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Jason E. Ralston, | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:17-cv-50161 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Bruce Rauner, *et al.*, | ) |
|     *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for attorney representation [178] is denied. Plaintiff's request to extend fact discovery is granted. The fact discovery deadline is extended to July 12, 2021.

## I. Background

In May 2017, Plaintiff Jason Ralston, then an inmate at Dixon Correctional Center ("Dixon"), filed a complaint under 42 U.S.C. § 1983 alleging that two officers at Dixon used excessive force against him. Plaintiff further alleged that both security and medical staff were deliberately indifferent to his serious medical needs when they attempted to cover up the incident by refusing doctors' requests to take x-rays and a CT scan of his injuries and interfering with his x-rays and/or CT scan to prevent accurate images of his injuries. Upon an initial review of Plaintiff's complaint, the district judge allowed Plaintiff to proceed with his excessive force and deliberate indifference claims against four Defendants. Dkt. 6. The district judge also denied Plaintiff's motion for attorney representation noting that Plaintiff had filed several lawsuits, was not an inexperienced litigant, and his complaint was clear enough to communicate his claims. Dkt. 6 at 4.[1]

In January 2018, the magistrate judge[2] denied Plaintiff's renewed motions for attorney representation because the case was still at the beginning stages of discovery and Plaintiff's pleadings to date were articulate and suggested that he understood both the legal issues and evidentiary needs for his claims. Dkt. 38 at 2. In September 2018, the magistrate judge denied Plaintiff's third motion for counsel because although Plaintiff raised several discovery obstacles, he was still able to effectively communicate his discovery needs. Dkt. 85.

---

[1] Approximately two weeks later, the district court denied Plaintiff's subsequent motion for counsel for the same reasons because Plaintiff had likely not yet received the court's order denying the original motion. Dkt. 13.

[2] In April 2019, this case was reassigned to the undersigned. Dkt. 105.

1

In December 2018, Plaintiff filed his fourth motion for attorney representation stating that he was unable to adequately represent himself due to his mental health issues, noting that he was on crisis watch at Joliet Treatment Center. Dkt. 93. The magistrate judge granted Plaintiff's motion and assigned attorney Alan Garrow to represent him. Dkts. 94-95.

In May 2019, attorney Garrow filed a motion to withdraw from the assignment because he was concerned that Plaintiff was not pursuing the case for a proper purpose, noting that Plaintiff became aggressive, lashed out, and called counsel "a worthless piece of #%&*" when discussing discrepancies in the facts alleged in the case. Dkt. 113 at 2. Following two hearings on the motion and a letter submitted by attorney Garrow further describing the circumstances surrounding his motion to withdraw, this Court granted the motion and assigned a new attorney, Aaron Buscemi, to represent Plaintiff. Dkt. 120-21.

In December 2020, attorney Aaron Buscemi filed a motion to withdraw from the assignment. Dkt. 167. Mr. Buscemi's motion recounted his efforts on the case to date, including a recent attempt to schedule a settlement conference with the Court before Plaintiff revoked counsel's authorization to engage in settlement talks. *See* Dkts. 167, 169. Mr. Buscemi stated that during his representation of Plaintiff, he endured various insults by Plaintiff to his person, his professional competency, and his reputation. Mr. Buscemi stated that he has been unable to work through these issues with Plaintiff as evidenced by recent letters wherein Plaintiff swore at him, threatened to report him to the ARDC, and accused him of conspiring with the Attorney General's Office to accept bribes to "throw [his] case." Dkt. 167 at 2-3. Mr. Buscemi was also concerned about his ability to effectively communicate with Plaintiff because Plaintiff had provided false or contradictory information about his case on several occasions. *Id.* at 3.

At the hearing on the motion on January 20, 2021, this Court granted Mr. Buscemi's motion to withdraw because counsel was no longer able to work effectively with Plaintiff considering the inappropriate statements made to counsel. This Court declined to recruit new counsel, ordered Mr. Buscemi to tender all discovery materials to Plaintiff, and extended fact discovery to March 29, 2021. This Court also addressed defense counsel's concerns over recent letters she received from Plaintiff that she represented were offensive, derogatory, and insulting. Plaintiff stated that he did not remember what he wrote, noting that he could see and write very little now that he was almost blind in both his eyes due to cataracts. This Court warned Plaintiff that such conduct must cease, and he must remain professional.

At a status hearing on March 29, 2021, the Court confirmed that fact discovery was now closed. Defendants expressed their intention to file a motion for summary judgment and were directed to schedule a summary judgment prefiling conference with the district judge.

On April 6, 2021, Plaintiff filed the instant motion for attorney representation, asserting that he is unable to respond to any motion for summary judgment because he is 90% blind and has no access to the law library. Dkt. 178. Plaintiff also requests an extension of discovery to conduct depositions and for a printout of the discovery provided on 3 discs and a thumb drive by Mr. Buscemi. Plaintiff expresses his discontent with his former counsel, calling Mr. Buscemi a phony, accusing him of accepting bribes from the Illinois Attorney General and sitting "on his dead ass and [doing] nothing for a year and a half," and calling him "full of shit" for attempting to settle his

case for such a low amount considering his injuries. Dkt. 178 at 16. Plaintiff also accuses this Court of accepting money from the Attorney General's Office and defense counsel of lying to the Court. Plaintiff also complains about the warden at his correctional facility withholding his outgoing and incoming legal mail and listening to his legal phone calls.

Since filing his motion for an attorney, Plaintiff has submitted five letters to the Court. Dkts. 179-83. In those letters Plaintiff reiterates his inability to see well enough to read court documents and requests that the Court read court documents to him at the upcoming status hearing. In addition, the letters continue to use abusive and threatening language and largely admit to using such language with his prior assigned counsel.

## II. Discussion

"There is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In making the decision whether to recruit counsel, the Court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to obtain counsel on her own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does this particular plaintiff appear competent to litigate the matter herself. *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). Among the factors to be considered are: (1) the stage of litigation; (2) the plaintiff's submissions to date; (3) the plaintiff's medical and mental health issues; (4) the plaintiff's literacy, communication skills, education level, and litigation experience; and (5) the complexity of the case. *See Olson*, 750 F.3d at 712; *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010); *Pruitt*, 503 F.3d at 655-56.

Plaintiff requests the assignment of a third attorney to represent him because he is nearly blind with no access to the law library and therefore cannot respond to Defendants' anticipated motion for summary judgment. Nevertheless, the Court finds that recruiting another attorney for Plaintiff is not warranted. Although this Court is sympathetic to Plaintiff's visual impairment, Plaintiff's inability to read and difficulty writing can be addressed with accommodations at Plaintiff's correctional facility or extensions of time and assistance from the Court and do not require the assignment of another attorney. This Court has already scheduled a hearing with the disability coordinator at Joliet Treatment Center to address these accommodations. Dkt. 184. Plaintiff has identified no other physical or mental impairment that prevents him from coherently presenting his case. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (upholding order denying motion to recruit counsel where plaintiff had not explained why his "conditions would prevent him from coherently presenting his case"). Plaintiff has had two attorneys assigned to represent him and both have withdrawn after Plaintiff was abusive, both orally and in writing, used vulgar language, made baseless allegations of wrongdoing, made threats to report counsel to the ARDC, and continued to provide false or contradictory information about his case. In addition to Plaintiff's former counsel and defense counsel's representations about Plaintiff's abusive conduct, Plaintiff's filings with this Court include the same type on inappropriate language or abusive conduct outlined by counsel. *See* Dkts. 178, 180.

3

A court's "decision to try to recruit counsel can and should be informed by the realities of recruiting counsel in the district." *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020). Although members of this District's Trial Bar are required to serve as *pro bono* counsel when requested, *pro bono* counsel are still a limited resource. The Court will not call upon a third attorney to represent Plaintiff and subject that attorney to his abusive and uncooperative behavior, especially where Plaintiff continued with such conduct despite assigned counsel's attempts to resolve these issues with him. *See Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 937 (7th Cir. 2020) ("The valuable help of volunteer lawyers is a limited resource. It need not and should not be squandered on parties who are unwilling to uphold their obligations as litigants.") (internal citation omitted); *Boykin v. Sandholm*, No. 16 CV 50162, 2020 WL 6018943, at *1 (N.D. Ill. Oct. 5, 2020), appeal dismissed, No. 20-2941, 2020 WL 9210687 (7th Cir. Nov. 25, 2020) ("While the Court recognizes the obstacles Plaintiff faces in litigating this case on his own, he must live with the consequences of his previous behavior, particularly his deplorable discord with the many attorneys who vigorously worked on his behalf.").

Moreover, this case is not so complex that it exceeds Plaintiff's capacity to litigate on his own behalf, even if required to respond to a motion for summary judgment. Plaintiff's allegations of excessive force and deliberate indifference relating to his x-rays and CT scan do not appear to involve complex medical issues where he is alleging that two Defendants used excessive force and two Defendants refused a doctor's recommendation to take x-rays and a CT scan and later ordered that a CT scan be taken in a way to show no injuries. Although Plaintiff is currently at different facility then where the events took place, Plaintiff's former counsel have already collected much of the discovery in this case and this Court will grant Plaintiff's motion to extend discovery to accommodate his request to take depositions. Plaintiff has also demonstrated his continued ability to communicate his needs to this Court both in writing and at telephonic hearings, even in the face of mental health challenges. *See Boykin v. Sandholm*, 801 F. App'x 417, 422 (7th Cir. 2020) (affirming the denial of counsel where even though the plaintiff described himself as mentally unstable and illiterate, he was a relatively savvy litigator, who was able to communicate lucidly). Plaintiff has also filed several cases in this district and is not inexperienced. Additionally, the district judge holds a conference with the parties before any motion for summary judgment may be filed. At that conference, the district judge will address any of Plaintiff's concerns about how to prepare for and respond to a motion for summary judgment. Moreover, defense counsel is required to provide Plaintiff with a Local Rule 56.2 statement, which outlines the summary judgment process.

Although this Court is denying Plaintiff's request for counsel, Plaintiff's ability to litigate this case *pro se* is not unlimited. "A district court has inherent authority to sanction conduct that abuses the judicial process." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2007). Such a sanction may include dismissal. *White v. Williams*, 423 Fed. App'x. 645, 646-47, 2011 WL 2214121 at *1 (7th Cir. 2011). Plaintiff has already been warned in another case of the possibility of dismissal if he continued to use the type of vulgar language he has used in this case. *See Ralson v. Rauner*, Case No. 3:17-cv-50164, Dkt. 16 (warning of dismissal if Plaintiff continued to use foul language in his pleadings). This Court reminds Plaintiff again to act professionally and refrain from any abusive or threatening conduct, either verbally or in writing, to counsel or the court in this case. Future conduct of this kind will not be tolerated and may lead to sanctions, including dismissal.

### III. Conclusion

Plaintiff's motion for attorney representation is denied. Plaintiff's request to extend fact discovery is granted. The fact discovery deadline is extended to July 12, 2021.

Date: May 3, 2021          By: _/s/ Lisa A. J_____
                               Lisa A. Jensen
                               United States Magistrate Judge